UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Alaska Maritime Employers Association, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) 3:16-cv-0043 JWS<br>) |
| vs. | ) **ORDER AND OPINION**<br>) |
| International Longshore and Warehouse Union, Alaska Longshore Division, *et al.*, | ) **[Re: Motion at docket 31]**<br>)<br>)<br>) |
| Defendants. | )<br>) |

## I. MOTION PRESENTED

At docket 31 defendants International Longshore and Warehouse Union ("ILWU"), Alaska Longshore Division and ILWU Unit 223 (collectively, "the Union") move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Amended Complaint of plaintiffs Alaska Maritime Employers Association, American President Lines, LTD, and Matson Lines (collectively, "AMEA"). AMEA opposes at docket 41;[1] the Union replies at docket 42. Oral argument was not requested and would not assist the court.

---

[1] Although the Union notified the court that AMEA's opposition was overdue, doc. 40, AMEA correctly notes that pursuant to Rule 6(d) its opposition was timely filed. Doc. 41 at 1 n1.

## II. BACKGROUND

AMEA is an association of two companies that conduct maritime shipping and dock operations in Dutch Harbor and other Alaska ports. The Union represents AMEA's employees. AMEA and the Union have entered into a collective bargaining agreement ("CBA") known as the All Alaska Longshore Agreement ("AALA"). The AALA contains a no-strike clause.[2] AMEA alleges that the Union has breached this clause "[o]n one or more occasions, including on August 18, 2015."[3]

AMEA brings this action for damages under § 301(a) of the National Labor Relations Act ("NLRA").[4] The Union seeks dismissal under Rule 12(b)(6), arguing that the AALA requires AMEA to arbitrate its grievance.

## III. STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[5] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[6] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts

---

[2]Doc. 33-1 at 14 ¶ 1.1. [sic]

[3]Doc. 25 at 4 ¶¶ 11, 14.

[4]29 U.S.C. § 185(a).

[5]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[6]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

alleged under a cognizable legal theory."[7] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[8]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[11] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[12] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[13]

## IV. DISCUSSION

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[14] In light of congressional policy that favors arbitration of disputes, however, if parties to a CBA

---

[7]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[8]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[9]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10]*Id.*

[11]*Id.* (citing *Twombly*, 550 U.S. at 556).

[12]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[13]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[14]*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

dispute whether a grievance is covered by the CBA's arbitration clause and that clause is ambiguous, a rebuttable presumption in favor of arbitrability applies.[15] Under this presumption Courts should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[16] If the court determines that an asserted dispute is covered by a mandatory arbitration clause, it may dismiss the case under Rule 12(b)(6).[17]

Courts apply federal common law principles of contract interpretation when construing a CBA.[18] The starting point for the court's analysis is the CBA's express written terms, considering the CBA as a whole.[19] For purposes of the present motion, the most pertinent section of the AALA is Section 11, entitled, "Disputes and Grievance Procedure[,] Joint Port Labor Relations Committee."[20] Subsection 5 of Section 11 is the AALA's arbitration clause. It reads as follows:

> The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and any Employer acting under the Agreement on the other hand, and no other remedies shall be utilized by the person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted.[21]

---

[15] *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014). *See also Int'l All. of Theatrical Stage Emp. & Moving Picture Technicians, Artists, & Allied Crafts of the U. S., Its Trusteed Local 720 Las Vegas, Nev. v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1042 (9th Cir. 2015).

[16] *Warrior*, 363 U.S. at 582–83.

[17] *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).

[18] *Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir. 2012).

[19] *Id.*

[20] Doc. 33-1 at 14.

[21] *Id.* at 15 ¶ 11.5.

The Union's interpretation of this run-on sentence focuses on its first clause, which states that the AALA's grievance procedure is the exclusive remedy with respect to "any disputes" between the Union/any employee and any employer. Because AMEA's grievance is a dispute between the employers and the Union, this action is covered under Section 11.5's first clause.

AMEA focuses on the second clause, which states that "the person" may not use any remedies other than those found in the AALA until "the grievance procedure has been exhausted." According to AMEA, this language limits the scope of the arbitration clause to "the person," which it interprets as "the person working under the AALA," because it does not state that "the Union" or "the Employer" are prohibited from using other remedies until contractual remedies are exhausted.

The court finds AMEA's interpretation unpersuasive for three reasons. First, the word "and" separates the first and second clauses, meaning that the second clause adds to the first, not limits it. Second, the first clause is broad—it covers all of an employer's grievances against its employees/the Union and vice versa. It is unlikely that the parties intended to negate this sweeping language by mere inference in the next clause, as AMEA argues. And third, the crux of AMEA's argument is that "the person" excludes both the Union and the employers because "the person" means "the employee." But when both clauses of Section 11.5 are considered together, a more natural interpretation is that "the person" means "the person who initiated the dispute." Under this interpretation, the arbitration clause provides that the grievance procedure is the exclusive remedy for all disputes between labor and employer, and no one may utilize other remedies without first exhausting that procedure.[22]

---

[22] *Cf. Local 13, Int'l Longshoremen's & Warehousemen's Union v. Pac. Mar. Ass'n*, 441 F.2d 1061, 1065 (9th Cir. 1971) (interpreting a CBA that provided that "no other remedies shall be utilized by any person with respect to any dispute" as meaning that "[e]mployer complaints of violation of the prohibition against illegal work stoppages were subject to" the CBA's exclusive grievance procedure).

AMEA challenges this interpretation by pointing to two other sections of the AALA that, it argues, shows that the parties intended to exclude employer-brought grievances from mandatory arbitration. AMEA first draws the court's attention to Subsection 59 of Section 11, which states that "[t]he Union representative on the job shall take the grievance or dispute promptly to the Employer representative in charge of the operations. Such dispute shall immediately be set forth by both parties in writing, stating the adjudication thereof, if any."[23] This language "establishes the 'first step' procedure for grievances," AMEA argues. And because it does not apply to employer-brought grievances, the AALA's grievance procedure is oriented only to employee-initiated disputes.[24]

This argument relies on the doctrine that an employer is not bound to follow a CBA's grievance procedure where that procedure is wholly employee oriented.[25] In *Standard Concrete v. General Truck Drivers*, the Ninth Circuit held that a CBA's three-step grievance procedure was wholly employee oriented, even though the third step could arguably apply to employer-initiated grievances, because the three steps were chronological and the first two steps referred only to employee-initiated grievances.[26] Because a party could not "reach Step Three without exhausting Steps One and Two," the court held that Step Three could not possibly refer to "the way a new grievance should be filed."[27] Because the grievance procedure applied only to disputes brought by employees, the employer was not required to exhaust contractual remedies.

The AALA's grievance procedure is nothing like the grievance procedure in *Standard Concrete*. It can involve up to five different levels of review, before: (1) the

---

[23] Doc. 33-1 at 15–16 ¶ 11.59.

[24] Doc. 41 at 5.

[25] 5 Lareau, *National Labor Relations Act: Law & Practice* § 41.09 (2d ed. 2015).

[26] 353 F.3d 668, 675 (9th Cir. 2003).

[27] *Id.*

Employer representative;[28] (2) the Joint Port Labor Relations Committee ("JPLRC");[29] (3) the Alaska Arbitrator;[30] (4) the Alaska Area Committee;[31] and (5) the Coast Arbitrator.[32] AMEA correctly notes that an employee may submit a grievance to the Employer representative to initiate a grievance, but this is not a necessary first step for initiating a dispute. The JPLRC has the power to investigate and adjudicate "all disputes" under the AALA,[33] which includes disputes that an employer initiates against its employee.[34] Further, as even AMEA admits, Section 7.64 provides that either party may submit a dispute relating to Section 7 of the AALA to the Alaska Arbitrator directly.[35] AMEA cannot reconcile these provisions that allow employers to initiate disputes with its contention that the AALA's grievance procedure is wholly employee oriented.

    AMEA's second argument is similarly unpersuasive. AMEA argues that because Section 7.64 merely states that a party "may" submit Section 7 disputes directly to the Alaska Arbitrator, this means that the entire grievance procedure is optional for employers. This argument is unpersuasive because it begs the question; its premise is that Section 11.5 applies only to employees. Section 7.64 is equally consistent with the Union's interpretation of the arbitration agreement as meaning that an employer "may" submit a Section 7 dispute directly to the Alaska Arbitrator, or it "may" submit the

---

[28]Doc. 33-1 at 15–16 ¶ 11.59.

[29]*Id.* at 16 ¶ 11.60.

[30]*Id.* ¶ 11.63.

[31]*Id.* at 17 ¶ 11.7.

[32]*Id.* ¶ 11.72.

[33]*Id.* at 18 ¶ 11.81.

[34]*Id.* ¶ 11.85.

[35]Doc. 41 at 8.

dispute to the JPLRC, but Section 11.5 requires the employer to utilize one of these two options.

In sum, the court finds that Section 11.5 of the AALA requires labor and employers alike to utilize the grievance procedure set out in Section 11. To the extent this provision is ambiguous, AMEA has not rebutted the presumption of arbitrabilty.

## V. CONCLUSION

For the reasons set forth above, defendants' motion at docket 31 is GRANTED. Plaintiffs' complaint is dismissed with prejudice.

DATED this 13th day of October 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT